Filed 8/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES PAUL TORFASON,<br><br>    Defendant and Appellant. | 2d Crim. No. B293047<br>(Super. Ct. No. 18PT-00615)<br>(San Luis Obispo County) |

In this case we decide whether a mentally disordered offender (MDO) can be recommitted for treatment of a different mental disorder than the one which formed the basis of the original commitment. We conclude that a recommitment order must be based on the same mental disorder that was the basis for the original commitment.

James Torfason appeals an order recommitting him to the California Department of Mental Health as an MDO. (Pen. Code,[1] § 2966, subd. (c).) He contends the recommitment order must be reversed because it was based on a different disorder

---

[1] Further unspecified statutory references are to the Penal Code.

than the disorder which formed the basis of his original commitment as an MDO. We agree and reverse.

## FACTS AND PROCEDURAL HISTORY

In 2017, the Board of Prison Terms (the Board) found Torfason met the criteria for an MDO commitment under section 2962. At trial, the experts opined Torfason suffered from both bipolar disorder and pedophilia. They opined he met all the criteria for MDO commitment based on his bipolar disorder. They opined that he did not meet the criteria based on his pedophilic disorder because he did not receive at least 90 days treatment for that disorder. (§ 2962.) The trial court found Torfason met the criteria for an MDO commitment based on his bipolar disorder. We affirmed the order. (*People v. Torfason* (Apr. 17, 2018, B286335 [nonpub. opn.].)

In 2018, the Board found Torfason met the requirements for recommitment as an MDO. Dr. Dia Gunnarsson, a forensic psychologist at Atascadero State Hospital, opined Torfason suffered from bipolar disorder and pedophilia. Based on Torfason's statements in his interview and his medical record, Gunnarsson opined that Torfason's bipolar disorder was in remission.

Gunnarsson opined that Torfason's pedophilia was not in remission. She testified that Torfason lacked insight into his diagnosis, did not complete his group therapy treatment, and had no viable relapse prevention plan. She opined that Torfason posed a substantial risk of harm to others because of his pedophilic disorder.

The trial court found the criteria under section 2962 to be true and recommitted him to the California Department of

2

Mental Health for further treatment based on the pedophilic disorder.

## DISCUSSION

Torfason contends the trial court erred when it recommitted him as an MDO based on his pedophilic disorder. We agree.

Torfason's claim raises an issue of statutory interpretation that we review de novo. (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.) When interpreting a statute, we first examine the plain language of the statute, "giving the words their usual, ordinary meaning." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.]" (*Ibid.*)

The Mentally Disordered Offender Act (MDO Act; § 2960 et seq.) provides a comprehensive scheme that provides treatment at three stages of commitment: (1) as a condition of parole (the initial commitment), (2) as an extension of parole (recommitment), and (3) following release from parole. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 (*Lopez*), disapproved on another ground in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.) Section 2960, which provides the legislative findings and declarations for the MDO Act, states that the MDO Act's intent is to treat "the severe mental disorder which was one of the causes of or was an aggravating factor" in the person's underlying crime.

To initially commit a person for MDO treatment, the prosecution must prove six criteria: (1) the individual must

3

suffer from "a severe mental disorder"; (2) the disorder is not or cannot be kept in remission; (3) the individual poses a risk of substantial danger to others; (4) "[t]he severe mental disorder" was a cause or an aggravating factor in committing the underlying crime; (5) the individual committed a qualifying offense pursuant to section 2962, subdivision (e); and (6) the individual was treated for "[t]he severe mental disorder" for at least 90 days within the year before release. (§ 2962, italics added.) The first three criteria are "dynamic" criteria that are "capable of change over time," and the last three are "'static'" criteria that are incapable of change over time. (*Lopez*, *supra*, 50 Cal.4th at p. 1062.) Use of the word "the" in subdivisions (b) and (c) to refer to the severe mental disorder makes clear that all six criteria must be met with respect to the same mental disorder. (*People v. Sheek* (2004) 122 Cal.App.4th 1606, 1611 [section 2962 plainly states that treatment must be for "'*the*'" severe mental disorder, and therefore "bootstrap[ping]" the 90 days treatment received for a different mental disorder does not satisfy the criteria for initial commitment for another mental disorder].)

Section 2966, subdivision (c) governs recommitment proceedings. It provides that if the Board "continues a parolee's mental health treatment under [s]ection 2962," the parolee may request a hearing before the Board and petition the superior court to challenge the Board's determination only to determine if the dynamic criteria are satisfied, i.e., (1) the parolee has "a severe mental disorder"; (2) which "is not in remission or cannot be kept in remission without treatment," and (3) the parolee poses a "substantial danger of physical harm to others." (§ 2966, subd. (c); *Lopez*, *supra*, 50 Cal.4th at pp. 1062-1063.)

4

We interpret the plain language of section 2966, subdivision (c) to mean that recommitment must be based on the same mental disorder on which the parolee was initially committed.  The use of the word "continues" and the reference to section 2962 both demonstrate that the Legislature meant a continuation of treatment of the same mental disorder that was found to be the basis for commitment and treatment originally.

The People argue that "*a* severe mental disorder" in section 2966, subdivision (c) means any mental disorder.  (Italics added.)  But we do not read section 2966 in a vacuum.  "It is part of a progressive scheme," that is intended to commit an individual for treatment of the disorder that was found to be a cause or aggravating factor in the commission of the underlying crime.  (*People v. Crivello* (2011) 200 Cal.App.4th 612, 617 (*Crivello*).)

Moreover, at the recommitment stage, the trial court cannot make a finding that the underlying crime was caused or aggravated by a different mental disorder than the one which formed the basis of the initial commitment.  That is a static criterion, which is not subject to change over time.  (*Crivello, supra*, 200 Cal.App.4th at p. 617.)  The static criteria involve only past events, and the parties "ha[ve] but one opportunity" at the initial commitment proceeding to prove whether the static criteria are met.  (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1076.)  A determination regarding any of the static criteria is binding on further proceedings and cannot be relitigated. (*Crivello*, at p. 617.)  "Thus, where a trial court has found that a severe mental disorder was not an aggravating factor in the commission of the crime, the People are precluded" from seeking recommitment on a different mental disorder.  (*People v. Francis*

5

(2002) 98 Cal.App.4th 873, 879; see *ibid.* [prosecution precluded from seeking a second MDO determination based on the same underlying offense].)

Our interpretation of section 2966, subdivision (c) is also supported by *People v. Garcia* (2005) 127 Cal.App.4th 558. There, the defendant was initially diagnosed with schizoaffective disorder, and pursuant to section 2962, he was treated for that disorder for three years. (*Id.* at p. 562.) Despite the treating staff concluding the defendant's disorder was in remission, the prosecutor filed a petition to extend the commitment pursuant to section 2970 and presented evidence that the defendant suffered from pedophilia. (*Id.* at p. 563.) The Court of Appeal held that the prosecutor did not have the independent power under section 2970 to initiate MDO proceedings. But even if it did, the evidence that the defendant suffered from pedophilia was inadequate for continued treatment. (*Id.* at p. 567.) The court reasoned that the "mental disorder for which extended involuntary treatment is sought must be the same mental disorder for which [the] defendant was treated as a condition" for parole. (*Ibid.*) Evidence of a new mental disorder "for which [the] defendant had never received treatment" could not serve as the basis of continued treatment. (*Ibid.*)

Similarly here, Torfason's pedophilia could not serve as the basis for recommitment because it is not the same mental disorder for which he was committed under section 2962.

6

## DISPOSITION

The judgment (order of recommitment) is reversed.

<u>CERTIFIED FOR PUBLICATION.</u>


                        TANGEMAN, J.

We concur:



GILBERT, P. J.


YEGAN, J.



7

Hernaldo J. Baltodano, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.